**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

\*

**SHERA WOODBURY,**

\*

    Plaintiff,

\*

v.                                                                    Case No.: PWG-17-1674

\*

**STEPPING STONES**
    **SHELTER, INC.,** *et al.***,**       \*

    Defendants.                      \*

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION AND ORDER**

Following a period of homelessness, Plaintiff Shera Woodbury, with the assistance of Montgomery County, Maryland (the "County"), spent several weeks living in Stepping Stones Shelter, Inc. (the "Shelter"), which provides "short-term temporary housing assistance" as "a stepping stone to permanent housing and rejoining the community." Am. Compl. ¶¶ 2, 31, ECF No. 27; Consumer Rights & Code of Conduct, ECF No. 27-2. Believing that she was treated unfairly and discriminated against by the Shelter based on her disability, religion, and political views, and that the County failed to intervene promptly enough on her behalf, despite her requests, Ms. Woodbury filed suit against the Shelter and the County. Compl., ECF No. 1 (redacted); ECF No. 2 (unredacted). Defendants have moved to dismiss. ECF No. 28. Because Ms. Woodbury has been given the opportunity to supplement and amend her pleadings yet still fails to state a claim under federal law, her federal causes of action will be dismissed with prejudice, and the Court will decline to exercise jurisdiction over her state law claims.

**Background**

In the early months of 2017, Ms. Woodbury was homeless and pregnant, and the County "denied [her] help," only providing her with housing (in a hotel) after a doctor deemed it necessary due to the circumstances of her pregnancy. Am. Compl. ¶ 20.[1] After she gave birth, Ms. Woodbury, with the County's assistance, was provided short-term housing at the Shelter. *Id.* ¶¶ 2, 31; Consumer Rights & Code of Conduct. She signed the Shelter's "Consumer Rights and Code of Conduct" statement on May 3, 2017; it provided that "there are certain expectations for [the resident] while in shelter" to "ensure shelters are safe for everyone and that [the resident and the Shelter] to help [the resident] move as quickly as possible from emergency housing to a home." Consumer Rights & Code of Conduct. Ms. Woodbury also signed the Shelter's Non-Discrimination Policy, which stated that the Shelter "provide[s] services to residents without regard to race, color, religion, sexual orientation, age, disability or veteran status." ECF No. 27-3. At the time, Woodbury's infant, who was placed in the Shelter with her, was ten days old and Woodbury was on medication following the infant's Cesarian-section birth, as well as for "stress related seizures." Shelter Arrival Form 1–2, ECF No. 27-4.

At the Shelter, Ms. Woodbury requested a first floor room because of her recent surgery, but the Shelter did not grant the request. Am. Compl. ¶ 9. Additionally, the Shelter "forc[ed] the plaintiff into house labor such as cleaning and cooking." *Id.* ¶ 11. Within days, on May 9, 2017, Ms. Woodbury felt that the Shelter "failed to uphold the plaintiff[']s rights," and she complained to the Shelter and the County. *Id.* ¶ 3. She asserts that the County ignored this and other complaints she and a friend made on her behalf. *Id.* ¶¶ 22, 24.

---

[1] For the purposes of considering Defendants' motion, I accept the well pleaded facts (but not legal conclusions) that Plaintiff has alleged in her Amended Complaint as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).

Ms. Woodbury alleges that the Shelter then "retaliated against the plaintiff by violating her rights she signed" by "voicing their dislikes" with regard to her "disability (epilepsy and post pregnancy), religion (Buddhist), [and] political views (Republican)." *Id.* ¶¶ 4–5. According to Ms. Woodbury, the Shelter initially allowed her to use a computer at the Shelter because she was a student and involved in a civil lawsuit but, in retaliation for her complaints, "those accommodations were taken from the plaintiff resulting in the plaintiff not being able to do homework or participate fully in the civil case." *Id.* ¶ 8. She alleges that the Shelter "ma[de] jokes regarding [her] epilepsy and post surgery wounds and delivery of a newborn," *id.* ¶ 11, and that one staff member got "in the plaintiff['] face and . . . scream[ed] threats" and "antagonize[d] the plaintiff [about] her religious beliefs and political views," *id.* at 16. She claims that, as a result of "the stress that the plaintiff encountered from being treated differently due to having a disability by the defendants," and "bullying from the staff," she "had 6 seizures during the stay at Stepping Stones Shelter Inc." *Id.* ¶¶ 9, 15. She also claims that another housemate physically threatened her the day she arrived. *Id.* ¶ 26.

Additionally, Ms. Woodbury claims that the Shelter "filed false claims against the plaintiff to Children Protective Service, stating the plaintiff sleeps with her newborn baby in a bed with a p[ie]ce of ply wood [sic] separating the baby from the plaintiff" and that she "verbally abused her newborn baby," causing "Child Protective Service [to come] to the shelter to speak with the plaintiff regarding these allegations." *Id.* ¶ 12. She views this as "defamation of character." *Id.* And, she alleges that the Shelter gave her expired baby formula, which caused her baby to have to spend three days in the pediatric intensive care unit. *Id.* ¶ 29.

Ms. Woodbury, who is proceeding without counsel, filed suit in this Court against the Shelter and the County on June 22, 2017. ECF Nos. 1, 2. She alleged only generally that she

was "discriminated against due to having a disability" and "retaliated against for complaining about issues," and that her "contract was breached by defendants," who "used defamation of character mechanisms towards plaintiffs."[2] Compl. 6. Accordingly, I ordered her to supplement her Complaint, ECF No. 6, which she did on July 20, 2017, ECF No. 7. She alleged:

> Montgomery County (defendant) is forcing Plaintiff to leave the state of Maryland and refuses to help Plaintiffs after Stepping Stones Shelter Inc. retaliated against Plaintiff by forcing them to leave. Montgomery County is not accommodating Plaintiff due to disability and post partum [sic] depression. Plaintiff [A.C.R.] is going to have to be on a prescribed formula for at least a year due to the formula that she received from defendants. Having a total of 6 seizures, which would lead to other results [sic].

Supp. 7. Ms. Woodbury claimed that the baby formula was moldy and expired; the bathroom had mold; the staff discriminated against her based on her disability, harassed her, and invaded her privacy; she "was kicked out of the shelter program," and the County "did nothing to help plaintiffs" after Ms. Woodbury complained about these events. *Id.* at 9.

The County and the Shelter sought leave to file motions to dismiss for failure to state a claim; the Shelter also asserted that Ms. Woodbury lacked standing to bring a claim for injunctive relief under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213. ECF Nos. 14, 19, 20. I held a conference call on October 12, 2017 regarding Defendants' proposed motions. ECF No. 18. I gave Ms. Woodbury the opportunity to amend her Complaint to address the alleged deficiencies, after which Defendants could file a

---

[2] Originally, Ms. Woodbury named her minor child, A.C.R., as a plaintiff. Compl. Because she could not file suit on the minor's behalf, *see* Loc. R. 101.1(a), and she did not state any injury in her Complaint or Supplement that the minor suffered separate and apart from her own alleged injuries, warranting appointment of counsel on the minor's behalf, the minor was terminated as a plaintiff. ECF No. 8. I note that any claim that the minor would have in his own right would sound in negligence, *see* Am. Compl. ¶¶ 29–30, and therefore would not survive Defendants' motion, based on the Court's decision not to exercise supplemental jurisdiction.

4

consolidated motion to dismiss if they believed that the deficiencies persisted in the amended pleading. *Id.*; Ltr. Order, ECF No. 19.

Ms. Woodbury filed an Amended Complaint, adding factual details to the events that allegedly occurred before she filed suit, as well as details to the allegations she made in her Supplement with regard to events that occurred after she filed suit. Am. Compl., ECF No. 27. For example, on June 26, 2017, two days after the staff member screamed in her face, the Shelter "accused the plaintiff of being a racist" and informed her that she had one day "to exit the shelter program . . . due to a claim that the plaintiff physically detained 2 toddlers to barricade them in the kitchen," which Plaintiff insists she did not do. *Id.* ¶¶ 13–15. Ms. Woodbury asserts that the agreement that she signed with the Shelter provided for "a two week notice to vacate." *Id.* ¶ 17. She alleges that the Shelter's Board of Directors met with the Shelter staff three days before she was asked to leave. *Id.* ¶ 25.

Thereafter, the County informed Ms. Woodbury that it "would put her and her newborn in a hotel room for 30 days only," during which time she had to find housing or "give up rights to her child or move out of the state of Maryland." *Id.* ¶ 18. She alleges that the new case manager the County assigned to her "pressured the plaintiff every week to relocated out of the state of Maryland" and "insisted the plaintiff get a job." *Id.* ¶ 19.

As best I can discern, Ms. Woodbury's claims in her Amended Complaint are that the Shelter was negligent in giving her baby expired baby formula; discriminated against her based on her disability, religion, and political views, in violation of the agreement she signed with the Shelter; discriminated against her based on her disability, in violation of the ADA; and defamed her "reputation and character." *Id.* ¶¶ 2–4, 30, 31. As for Montgomery County, she acknowledges that it "helped the plaintiff by referring her to a housing program and paid for the

5

hotel room for [her] and the baby," but complains that "it took a legal suit to get that assistance." *Id.* ¶ 31. She alleges that, had the County helped her sooner, "then most of the trauma the plaintiff endured could have been avoided." *Id.* She seeks $1.5 million. *Id.* at 7.

After Ms. Woodbury filed her Amended Complaint, Defendants filed a consolidated motion to dismiss, ECF No. 28, along with a Memorandum in Support, ECF No. 29. I notified Ms. Woodbury on the October 12, 2017 conference call, by letter order, and through a letter from the Clerk's Office of her opportunity to oppose the motion. *See* Ltr. Order; Rule 12/56 Ltr., ECF No. 30 (notifying plaintiff of right time oppose motion). I also provided her with copies of relevant portions of the Federal Rules of Civil Procedure and the Local Rules regarding pleadings, motions to dismiss, and motions for summary judgment. *See* Ltr. Order Exs., ECF Nos. 19-1, 19-2. Despite this ample notification, Ms. Woodbury did not file an opposition, and the time for doing so has passed, *see* Loc. R. 105.6. Because Ms. Woodbury fails to state a federal claim against either Defendant, I will dismiss those claims and decline to exercise supplemental jurisdiction over the state law claims.

## **Failure to State a Claim**

### *Standard of Review*

Defendants move to dismiss pursuant to Rule 12(b)(6),[3] pursuant to which a complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the

---

[3] Insofar as the Shelter argues pursuant to Fed. R. Civ. P. 12(b)(1) that Ms. Woodbury lacks standing to bring an ADA claim for injunctive relief, Defs.' Mem. 7, I need not address this argument because Ms. Woodbury does not seek injunctive relief, *see* Am. Compl. 7.

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). Additionally, while this Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts that set forth a claim currently cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 391 (4th Cir. 1990).

*Claims Listed on Cover Sheet*

Ms. Woodbury listed a number of constitutional, contract, and tort causes of action on her Civil Cover Sheet. ECF No. 1-1. Checking the box on the cover sheet, without providing supporting allegations, is insufficient to state a claim. *See Iqbal*, 556 U.S. at 678–79; Fed. R. Civ. P. 8(a)(2). Therefore, the claims that are not sufficiently alleged in the Amended Complaint, but simply listed on the cover sheet, will be dismissed. *See Iqbal*, 556 U.S. at 678–79; Fed. R. Civ. P. 8(a)(2), 12(b)(6).[4]

---

[4] The Shelter also states that "it is not clear whether Ms. Woodbury intended to raise any claim under the Rehabilitation Act," and the County addresses a possible Rehabilitation Act claim, apparently out of an abundance of caution, Defs.' Mem. 8, 25. Given that Plaintiff does not reference the Rehabilitation Act in her Amended Complaint or even her cover sheet, I will not "conjure up questions never squarely presented." *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

7

*ADA Claim against the Shelter*

Ms. Woodbury claims disability discrimination in violation of the ADA and seeks only money damages. Am. Compl. 7 & ¶ 31. Title III of the ADA states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C.A. § 12182. While the Shelter certainly may fall within the purview of Title III of the ADA, "it is well established that Title III does not create a private cause of action for money damages." *Bray v. Marriott Int'l*, 158 F. Supp. 3d 441, 444 (D. Md. 2016) (quoting *Estate of Saylor v. Regal Cinemas, Inc.*, 54 F. Supp. 3d 409, 429–30 (D. Md. 2014) (citing *Goodwin v. C.N.J., Inc.,* 436 F.3d 44, 50 (1st Cir. 2006) (collecting cases))). Accordingly, Ms. Woodbury fails to state a claim against the Shelter under the ADA. *See id.*; *Saylor*, 54 F. Supp. 3d at 444.

*Additional Federal Discrimination Claims against the Shelter*

Ms. Woodbury also refers to religious and political view discrimination. To the extent that she alleges that the Shelter breached the agreement she signed by discriminating against her in violation of its Non-Discrimination Policy, I will address that claim along with her other state law claims. But, insofar as she alleges discrimination in violation of federal law, it is unclear to me what law she claims the Shelter violated. Certainly, 42 U.S.C. § 1981(a) provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). Thus, a Black or African-American person, such as Ms. Woodbury, *see* Shelter Arrival Form 1, can bring a claim for "discrimination under 42 U.S.C. § 1981 in the context of goods and services." *Boardley v. Household Fin. Corp. III*, 39 F. Supp. 3d 689, 710 (D. Md. 2014) (quoting *Painter's Mill Grille, LLC v. Brown*, No. RDB-11-1607, 2012 WL 576640, at *6 (D. Md. Feb. 21, 2012) (quoting *Williams v. Staples, Inc.,* 372 F.3d 662, 667 (4th Cir. 2004))).

To bring a § 1981 discrimination claim, she must allege that

(1) [s]he is a member of a protected class; (2) [s]he sought to enter into a contractual relationship with the defendant; (3) [s]he met the defendant's ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendant to other similarly situated customers; and (4) [s]he was denied the opportunity to contract for goods or services that was otherwise afforded to white customers.

*Id.* (quoting *Painter's Mill Grille*, 2012 WL 576640, at *6 (quoting *Williams v,* 372 F.3d at 667)). Ms. Woodbury identifies herself as a Black or African-American woman, claims discrimination, and refers to a contract. Am. Compl. ¶¶ 2–4. But, Ms. Woodbury does not state a § 1981 claim because she alleges that the Shelter *breached* the agreement she signed with it, rather than refusing to *enter* into an agreement at all. *See id.*; *Williams*, 372 F.3d at 667; *Boardley*, 39 F. Supp. 3d at 710; *Painter's Mill Grille*, 2012 WL 576640, at *6. Beyond this, I will not speculate as to what other claims she may have intended to state. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Therefore, any such claims are dismissed. *See id.*; *see also Iqbal*, 556 U.S. at 678–79; Fed. R. Civ. P. 12(b)(6).

*Constitutional Rights Claims against the Shelter*

Ms. Woodbury refers to the First Amendment rights of Freedom of Speech and Religion in her Supplement, Supp. 4, but a conclusory recitation of a cause of action without sufficient factual allegations demonstrating a plausible claim is not sufficient to state a claim. *See Iqbal*,

9

556 U.S. at 678–79. Moreover, such claims would be brought pursuant to 42 U.S.C. § 1983, which provides for the liability of "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. While Ms. Woodbury originally alleged that the Shelter received some state and local funding, Compl. 4, she has not alleged that the Shelter is a state actor for purposes of § 1983. *See Crussiah v. Attia*, No. PX 15-2516, 2016 WL 3997315, at *5 (D. Md. July 26, 2016), *aff'd,* 675 F. App'x 319 (4th Cir. 2017) ("[M]erely because a private entity is subject to state or federal regulation does not transform its employees or agents into state actors. *Dowe*, 145 F.3d at 655 (4th Cir. 1998) ('A plaintiff cannot invoke § 1983 simply because a private actor is regulated and funded by the State.'"). Consequently, any claims that the Shelter violated her Constitutional rights are dismissed. *See id.*; *Beaudett*, 775 F.2d at 1278; *see also Iqbal*, 556 U.S. at 678–79.

*Claim against the County*

Ms. Woodbury makes clear in her Amended Complaint that she is suing the County for failing to intervene "sooner" when she complained about her treatment by the Shelter and the discrimination that she perceived. Am. Compl. ¶ 31. Indeed, she acknowledges that the County "helped the plaintiff by referring her to a housing program and paid for the hotel room for [her] and the baby." *Id.* What is not clear is what cause of action Ms. Woodbury brings against the County. For this reason alone, her claim against the County is subject to dismissal. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985); *see also Iqbal*, 556 U.S. at 678–79.

Moreover, to the extent Ms. Woodbury is claiming that the County's delayed action violated the ADA, she cannot state a claim because even if she had a qualifying disability and was otherwise qualified to participate in a program or receive benefits, she has not alleged that

she was excluded from a program or denied benefits; she alleges that she received housing, just not as quickly as she wanted. *See Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005) (elements of Title II ADA claim include exclusion from participation in a service or program or denial of benefits based on disability). Nor has she alleged that the delay was based on her disability. Accordingly, any ADA claim against the County will be dismissed. *See id.*

Insofar as Ms. Woodbury claims that the delay violated her constitutional rights, it is true that "Montgomery County . . . is amenable to suit and qualifies as a 'person' for purposes of § 1983." *Horn v. Maryland*, No. PWG-17-3633, 2018 WL 704851, at *2 (D. Md. Feb. 2, 2018). But, to bring a § 1983 claim against the County, she would need to bring it as a *Monell* claim, which is a form of § 1983 action under which a municipality, such as the County, is liable "where a policymaker officially promulgates or sanctions an unconstitutional law, or where the municipality is deliberately indifferent to the development of an unconstitutional custom." *Smith v. Ray*, 409 Fed. App'x 641, 651 (4th Cir. 2011); *see Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978). A municipality is only liable under *Monell* if, pursuant to a municipal policy or custom, a municipal employee took unconstitutional action. *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984); *Walker v. Prince George's Cty., Md.*, 575 F.3d 426, 431 (4th Cir. 2009); *Peterson v. Prince George's Cty.*, No. PWG-16-1947, 2018 WL 488827, at *6 (D. Md. Jan. 19, 2018). Ms. Woodbury has not stated a *Monell* claim because she fails to allege a County policy or custom that caused the alleged violation. *See Milligan*, 743 F.2d at 229; *Walker*, 575 F.3d at 431; *Peterson*, 2018 WL 488827, at *6.

*State Law Claims*

Having dismissed the federal claims, the Court declines to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3).

*Conclusion*

In sum, Ms. Woodbury's federal claims against the Shelter and the County are dismissed, and the Court will not exercise jurisdiction over the remaining state claims. As noted, Ms. Woodbury supplemented her Complaint and then filed an Amended Complaint after Defendants filed letter requests to file motion to dismiss, in which they identified Ms. Woodbury's pleading deficiencies and provided citations to federal statutes and Fourth Circuit and this Court's case law. ECF Nos. 14, 20. Despite that guidance, Ms. Woodbury failed to cure her pleading deficiencies when she filed her Amended Complaint. Moreover, given the legal deficiencies noted above with regard to many of the federal claims, further amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting that reasons to deny leave to amend include, inter alia, "repeated failures to cure deficiencies by amendments previously allowed" and "futility of amendment"). Further, Plaintiff has not opposed Defendants' motion. When a defendant's motion to dismiss a complaint states specific deficiencies that warrant dismissal, and presents supporting legal arguments, it is the plaintiff's obligation to respond substantively to address them. Plaintiff's failure to respond to Defendants' arguments constitutes abandonment of those claims. *See Whittaker v. David's Beautiful People, Inc.*, No. DKC-14-2483, 2016 WL 429963, at *3 n.3 (D. Md. Feb. 4, 2016); *Sewell v. Strayer Univ.*, 956 F. Supp. 2d 658, 669 n.9 (D. Md. 2013); *Ferdinand–Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 & 783 (D. Md. 2010). Moreover, any abandoned claims are subject to dismissal with prejudice. *Sewell v. Strayer Univ.*, No. DKC-12-2927, 2013 WL 6858867, at *4 (D. Md. Dec. 27, 2013) (stating that

"retaliation claim was dismissed with prejudice . . . because she abandoned [the] claim by failing to address it in the reply brief"); *Farrish v. Navy Fed. Credit Union*, No. DKC-16-1429, 2017 WL 4418416, at *3 (D. Md. Oct. 5, 2017). Accordingly, dismissal of the federal claims with prejudice is appropriate. *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013).

## **ORDER**

For the reasons stated in this Memorandum Opinion and Order, it is, this 25th day of June, 2018, hereby ORDERED that

1. Defendants' Motion to Dismiss, ECF No. 28, IS GRANTED;

2. Plaintiff's federal claims ARE DISMISSED with prejudice;

3. The Court declines to exercise supplemental jurisdiction over the state law claims; and

4. The Clerk SHALL MAIL a copy of this Memorandum Opinion and Order to Plaintiff and CLOSE THIS CASE.

/S/
Paul W. Grimm
United States District Judge

lyb